IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 12, 2025 Session

**STATE OF TENNESSEE v. LOUIS WAYNE FRAZIER**

**Appeal from the Circuit Court for Giles County**
**No. 16098     Christopher V. Sockwell, Judge**

_____

**No. M2024-01266-CCA-R3-CD**

_____

The Defendant, Louis Wayne Frazier, pled guilty to the attempted sexual battery of his granddaughter. Following a sentencing hearing, the trial court imposed a sentence of six years and ordered that the sentence be served in custody. On appeal, the Defendant argues that the trial court abused its discretion in imposing the maximum sentence and denying his request for an alternative sentence. Upon our review, we affirm the trial court's decision to impose a six-year sentence. However, we respectfully remand the case to the trial court for a new hearing regarding the denial of an alternative sentence.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Circuit Court Affirmed in Part; Case Remanded**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which J. ROSS DYER and JILL BARTEE AYERS, JJ., joined.

Brennan M. Wingerter, Assistant Public Defender - Appellate Director, Tennessee District Public Defenders Conference (on appeal); Travis B. Jones, District Public Defender; and Teresa Brewer Campbell, Assistant District Public Defender (at sentencing hearing), for the appellant, Louis Wayne Frazier.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General, and Caroline Weldon, Assistant Attorney General; Brent A. Cooper, District Attorney General; and Hunter C. Knight, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## FACTUAL BACKGROUND

On November 27, 2023, the Defendant entered a plea of *nolo contendere* to the offense of attempted aggravated sexual battery of his granddaughter, a Class C felony. According to the factual basis submitted by the State at the plea hearing, the Defendant "made multiple attempts and, in fact, did touch [his granddaughter's] genitals for sexual gratification." The State also noted that the Defendant "acknowledged he may need some assistance or help." The plea agreement left the sentence length and manner of service to the discretion of the trial court.

The trial court held a sentencing hearing over two days in July 2024. At the hearing, the State introduced the presentence report and psychosexual evaluation without objection. The victim, who was fifteen years old at the time of the hearing, testified that the Defendant had touched her inappropriately from "before [she] can remember, all the way up to age 11." She stated that the abuse occurred in the Defendant's car and home. In her forensic interview, which was played for the court, the victim described the Defendant placing his hands in her pants and rubbing her genitals. She further stated that the Defendant placed her hand on his penis and had her move it up and down. At the sentencing hearing, the victim testified that the abuse finally stopped when "it started to make me even more uncomfortable, and I just told him to stop."

The victim's mother testified that the Defendant had also abused her when she was a child. She described an incident in which the Defendant lifted her nightgown and placed her on top of him. When she later confronted the Defendant about the incident, he responded that she had dreamed it. The mother testified that the Defendant gave a similar response when she confronted him about the victim's disclosure.

The State introduced into evidence a video-recorded interview between the Defendant and law enforcement. In the interview, the Defendant suggested that the victim might have confused him with another person and stated, "I never knew that I touched her." He later said, "If I did, I didn't know I was touching her." The Defendant did not present any proof at the hearing.

At the conclusion of the sentencing hearings, the trial court found that the Defendant was a Range I, standard offender subject to a sentencing range of three to six years. The court applied enhancement factor (1), finding that the defendant had prior criminal

behavior in this case. *See* Tenn. Code Ann. § 40-35-114(1). The court also applied enhancement factor (4), finding that the victim was particularly vulnerable because she was only four years old when the abuse began. *See id.* § 40-35-114(4). Finally, the court applied enhancement factor (14), finding that the Defendant abused a position of private trust as the victim's grandfather. *See id.* § 40-35-114(14). The court found no applicable mitigating factors and imposed a six-year sentence to be served in the Tennessee Department of Correction.

The trial court filed the judgment of conviction on July 26, 2024. Three weeks later, the court filed a formal sentencing order. In this order, the court reaffirmed its findings as to enhancement factors and the length of the sentence. Regarding the Defendant's request for an alternative sentence, the court's order found "that, pursuant to the guidance of Tennessee Code Annotated [section] 40-35-103, incarceration is necessary to avoid depreciating the seriousness of the offense and therefore probation is not appropriate."

The Defendant filed a timely notice of appeal on August 21, 2024. *See* Tenn. R. App. P. 4(a).

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The Defendant raises two issues for review in this case: whether the trial court abused its discretion by imposing the maximum sentence and by denying an alternative sentence to incarceration.

Our supreme court has recognized that we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). As such, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out" in the Sentencing Act. *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). This standard of appellate review also applies to a trial court's decision to grant or deny alternative sentencing. *State v. Caudle*, 388 S.W.3d 273, 279 (Tenn. 2012).

In each of these contexts, however, this deferential standard of review is subject to an important caveat: the trial court must "place on the record any reason for a particular

sentence." *Bise*, 380 S.W.3d at 705; *Caudle*, 388 S.W.3d at 279 ("[A]s noted in *Bise*, the key to meaningful appellate review under the abuse of discretion standard is whether the trial court recites a proper basis for the sentence."). Indeed, our supreme court has recognized that "appellate courts cannot properly review a sentence if the trial court fails to articulate in the record its reasons for imposing the sentence." *Bise*, 380 S.W.3d at 706 n.41.

When the record does not reflect the trial court's findings or reasoning, an appellate court has two options. It may either undertake a de novo review to determine whether the record supports the sentence, or remand the case to the trial court for reconsideration in light of the applicable sentencing factors. *See State v. Sheets*, No. M2022-00538-CCA-R3-CD, 2023 WL 2908652, at *5 (Tenn. Crim. App. Apr. 12, 2023) (citations omitted), *no perm. app. filed*. In selecting between these approaches, the appellate court may weigh several considerations, including the completeness of the existing record, the fact-intensive nature of the sentencing inquiry, and the feasibility of obtaining supplemental findings. *See State v. King*, 432 S.W.3d 316, 328 (Tenn. 2014).

## ANALYSIS

### A. LENGTH OF SENTENCE

The Defendant first argues that the trial court abused its discretion by imposing the maximum sentence in the range. He agrees that the sentence is within the applicable sentencing range. Nonetheless, he asserts that the trial court misapplied one of the three enhancement factors considered and imposed a sentence longer than necessary to accomplish the purposes and principles of sentencing. The State responds that even if the trial court misapplied an enhancement factor, the sentence should be affirmed because the trial court did not wholly depart from the purposes and principles of the Sentencing Act in imposing the sentence. We agree with the State.

In deciding upon a sentence, a trial court must consider the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the defendant made on his own behalf; and (8) the result of the validated risk and needs assessment conducted by the department and

contained in the presentence report. *See* Tenn. Code Ann. §§ 40-35-102, -103, -210(b) (2019); *see also Bise*, 380 S.W.3d at 697-98. In addition, the sentence imposed "should be no greater than that deserved for the offense committed" and should "be the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

Moreover, in establishing the length of a sentence within the applicable range of punishment, a trial court must consider, but is not bound by, the following advisory sentencing guidelines:

(1)     The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2)     The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2019). In addition, the "sentence length within the range should be consistent with the purposes and principles" of the Sentencing Act. *Id.* § 40-35-210(d).

Although the trial court must consider applicable enhancement and mitigating factors, these factors are advisory only. *See Bise*, 380 S.W.3d at 699 n.33, 706. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is consistent with the purposes and principles of [the Sentencing Act]." *Carter*, 254 S.W.3d at 343 (citation and internal quotation marks omitted). To this end, we have also recognized that "a maximum sentence within the appropriate range, in the total absence of any applicable enhancement factors, and even with the existence of applicable mitigating factors, should be upheld as long as there are reasons consistent with the statutory purposes and principles of sentencing." *State v. Chapman*, No. M2011-01670-CCA-R3-CD, 2013 WL 1035726, at *9 (Tenn. Crim. App. Mar. 13, 2013), *no perm. app. filed*.

The Defendant challenges the trial court's application of enhancement factor (4), which authorizes an increased sentence when "[a] victim of the offense was particularly vulnerable because of age or physical or mental disability." Tenn. Code Ann. § 40-35-

114(4). Under well-settled law, the factor may apply when evidence in the record establishes that, due to the victim's age or condition at the time of the offense, the victim was less able to resist the abuse, summon help, or testify against the perpetrator. *State v. Poole*, 945 S.W.2d 93, 96-97 (Tenn. 1997); *State v. Kissinger*, 922 S.W.2d 482, 487 (Tenn. 1996); *State v. Lewis*, 44 S.W.3d 501, 505 (Tenn. 2001). Although the evidence need not be extensive, it must demonstrate a particular vulnerability more than the victim's age alone. *See Poole*, 945 S.W.2d at 97; *State v. Burnett*, No. W2016-01712-CCA-R3-CD, 2018 WL 1124538, at *6 (Tenn. Crim. App. Feb. 28, 2018), *perm. app. denied* (Tenn. July 18, 2018).

Importantly, because enhancement factor (4) focuses on the victim's particular vulnerability, it may be applied even when the victim's age is an essential element of the underlying offense. For example, although aggravated sexual battery requires proof that the victim was under thirteen years of age, factor (4) may still be applied where the circumstances show that the victim was particularly vulnerable in fact due to physical or mental limitations. *See Kissinger*, 922 S.W.2d at 487. We have upheld the application of factor (4) in such cases when the record reflects that the victim's developmental stage, small physical size, or dependent relationship to the defendant impaired the victim's capacity to resist the abuse or report it. *See, e.g.*, *State v. Addair*, No. E2018-00799-CCA-R3-CD, 2019 WL 5095652, at *6 (Tenn. Crim. App. Oct. 11, 2019) (recognizing that a three-year-old victim's dependence, age, and small size established particular vulnerability), *perm. app. denied* (Tenn. Mar. 26, 2020); *State v. Boykin*, No. W2018-01207-CCA-R3-CD, 2019 WL 5269026, at *12 (Tenn. Crim. App. Oct. 17, 2019) (recognizing that a child was "completely powerless to prevent the abuse"), *perm. app. denied* (Tenn. Feb. 26, 2020). The critical inquiry is whether, based on the victim's specific characteristics at the time of the offense, he or she was rendered particularly vulnerable to the Defendant's conduct. *See, e.g.*, *State v. Walton*, 958 S.W.2d 724, 729 (Tenn. 1997).

In this case, a key issue with applying enhancement factor (4) is the lack of evidence identifying the facts supporting the conviction offense. Although the indictment charged the Defendant with continuous sexual abuse of a child between 2012 and 2021, the Defendant entered a plea to a single count of attempted aggravated sexual battery. Neither the written plea agreement nor the State's factual recitation at the plea hearing identified a specific date or incident to support the conviction. At the sentencing hearing, however, the State introduced evidence spanning the entire nine-year period alleged in the indictment. As a result, the record does not show whether the conviction was based on conduct that occurred when the victim was especially vulnerable or at a later point.

This lack of specificity complicates the application of enhancement factor (4), which requires proof that the victim was particularly vulnerable due to age or physical or mental condition at the time of the offense. The record provides no clear indication of when the offense occurred or how the victim's vulnerability factored into the specific conduct underlying the conviction. As a result, the application of enhancement factor (4) appears to rest on the broader pattern of abuse alleged in the indictment, not on the offense-specific facts required by law. *See State v. Kissinger*, 922 S.W.2d 482, 488 (Tenn. 1996). Given these uncertainties, the record does not adequately support the application of this enhancement factor.

Nevertheless, even if the trial court misapplied this enhancement factor, the circumstance would not warrant a new sentencing hearing. As our supreme court held in *Bise*,

> [A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

*Bise*, 380 S.W.3d at 706. Stated another way, to obtain relief from a within-range sentence, a defendant cannot merely allege that the trial court misapplied enhancement or mitigating factors. Instead, the Defendant must also show that the sentence is not supported by "other reasons consistent with the purposes and principles of sentencing," such that the court "wholly departed" from the Sentencing Act. *See id.*; *State v. Hendrix*, No. W2015-01671-CCA-R3-CD, 2016 WL 3922939, at *8 (Tenn. Crim. App. July 15, 2016) ("As we previously noted, the court's misapplication of certain enhancement factors does not invalidate its within-range sentence unless the court wholly departed from the Sentencing Act."), *perm. app. denied* (Tenn. Nov. 22, 2016).

In this case, the Defendant concedes that the trial court properly applied two other enhancement factors. For example, the Defendant does not dispute that the trial court properly applied enhancement factor (14), relating to a breach of private trust. Tenn. Code

Ann. § 40-35-114(14). Nor does he argue that the court improperly applied enhancement factor (1), though he challenges the weight given to it.[1] Tenn. Code Ann. § 40-35-114(1).

Thus, even under the Defendant's argument, the record supports that the trial court properly applied at least two enhancement factors and found that no mitigating factors were present. Tenn. Code Ann. § 40-35-210(b)(5). As such, because the trial court considered the purposes and principles of sentencing and did not "wholly depart" from the Sentencing Act when setting the length of the sentence, we affirm its decision in that regard. The Defendant is not entitled to relief on this ground.

### B.     ALTERNATIVE SENTENCING

The Defendant also challenges the trial court's denial of probation or other form of alternative sentencing. He argues that the court failed to evaluate whether he was a favorable candidate for an alternative sentence, did not articulate adequate findings on the record, and may have misunderstood the availability of probation. The State responds that the trial court acted within its discretion, emphasizing the seriousness of the offense and the Defendant's limited amenability to rehabilitation. Upon review, we conclude that a remand for a new hearing is required.

"Any sentence that does not involve complete confinement is an alternative sentence." *State v. Sanders*, No. M2023-01148-CCA-R3-CD, 2024 WL 1739660, at *3 (Tenn. Crim. App. Apr. 23, 2024) (citation and internal quotation marks omitted), *perm. app. denied* (Tenn. July 17, 2024). Our supreme court has observed that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and [it] authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison Cnty.*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "[I]ndividualized punishment is the essence of alternative sentencing," and punishment must fit both the offender and the offense. *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

Tennessee Code Annotated section 40-35-103(1) (2019) provides that a sentence involving confinement may be imposed if one or more of the following considerations apply:

---

[1]     Although the Defendant challenges the trial court's weighing of these factors, our supreme court has made clear that "mere disagreement with the trial court's weighing of the properly assigned enhancement and mitigating factors is no longer a ground for appeal." *Bise*, 380 S.W.3d at 706.

(A)    confinement is necessary to protect society by restraining a defendant with a long history of criminal conduct;

(B)    confinement is necessary to avoid depreciating the seriousness of the offense, or confinement is particularly suited to provide effective deterrence to others likely to commit similar offenses; or

(C)    measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

In addition, the trial court must consider the defendant's potential for rehabilitation. *See* Tenn. Code Ann. § 40-35-103(5).  Even when eligible for probation, the defendant bears the burden of establishing suitability, including a showing that probation will "subserve the ends of justice and the best interest of both the public and the defendant." *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008).  In evaluating probation, the trial court considers: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrent value of sentencing.  *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017); *State v. Francis*, No. M2022-01777-CCA-R3-CD, 2024 WL 4182870, at *6 (Tenn. Crim. App. Sept. 13, 2024), *no perm. app. filed*.

The General Assembly has required that trial courts "place on the record, either orally or in writing . . . the reasons for the sentence."  Tenn. Code Ann. § 40-35-210(e)(1)(B).  This requirement ensures that the record reflects the court's independent judgment and consideration of the parties' arguments.  As our supreme court has explained, the record must contain "enough to satisfy the appellate court that [the trial court] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority."  *State v. Perry*, 656 S.W.3d 116, 126 (Tenn. 2022) (quoting *Bise*, 380 S.W.3d at 706 n.41).

No bright-line rule determines whether a trial court's explanation demonstrates a reasoned basis for a sentence.  As *Bise* confirms, trial courts are not required to provide a particularly detailed or lengthy sentencing explanation, and we have affirmed sentences where the record shows the court actually considered the relevant factors—even if it did not identify those factors explicitly in its order.  *See State v. Henderson*, No. W2022-00882-CCA-R3-CD, 2023 WL 4105937, at *7 (Tenn. Crim. App. June 21, 2023), *no perm. app. filed*.

However, where a trial court offers only vague or generalized explanations and fails to connect its decision to statutory considerations and factual findings, we have declined to apply the presumption of reasonableness under *Bise*. In the context of alternative sentencing, several recent decisions from the supreme court and this court illustrate circumstances in which we have declined to grant deference to a trial court's decision, including the following:

- when the trial court "failed to articulate its reasons for ordering incarceration in accordance with the purposes and principles of sentencing," *see Trent*, 533 S.W.3d at 295;

- when the trial court denied probation generally based on the defendant's history, the circumstances of his offense, and rehabilitation, but failed to identify the facts that led to its decision, *see State v. Smith*, No. M2023-00367-CCA-R3-CD, 2024 WL 1699210, at *10 (Tenn. Crim. App. Apr. 19, 2024), *no perm. app. filed*;

- when the trial court considered the purposes and principles of sentencing generally, but failed to identify which principles carried weight or how they were applied, *see State v. Crabtree*, No. M2021-01154-CCA-R3-CD, 2023 WL 2133831, at *20 (Tenn. Crim. App. Feb. 21, 2023), *no perm. app. filed*;

- when the trial court made few factual findings, failed to indicate whether it examined the statutory considerations for imposing confinement, and did not place in the record its reasons for imposing the sentence, *see State v. Wilson*, No. W2019-01550-CCA-R3-CD, 2020 WL 6828966, at *6-7 (Tenn. Crim. App. Nov. 19, 2020), *no perm. app. filed*; *State v. Wright*, No. E2018-01402-CCA-R3-CD, 2020 WL 2919450, at *8 (Tenn. Crim. App. June 3, 2020), *no perm. app. filed*; and

- when the trial court acknowledged the defendant's criminal history or other aggravating facts, but "failed to acknowledge the requisite statutory considerations or to articulate the reasons for the sentence of full confinement in accordance with the purposes and principles of sentencing," *see State v. Yost*, No. E2023-01457-CCA-R3-CD, 2024 WL 4296930, at *3 (Tenn. Crim. App. Sept. 26, 2024), *no perm. app. filed*; *State v. Pitts*, No. E2022-01375-CCA-R3-CD, 2023 WL 4363415, at *4 (Tenn. Crim. App. July 6, 2023), *no perm. app. filed*.

In each of these cases, the issue was not the brevity of the trial court's explanation but rather its failure to draw a clear connection between the factual findings and the legal principles governing alternative sentencing. Without that analytical link, the basis for the sentencing decision remains unclear, thus making meaningful appellate review more difficult.

These concerns are present in this case. After setting the length of the sentence, the court turned to alternative sentencing and offered the following explanation:

> As we've considered all of — the Court has considered all of the evidence in the record and that it was an extreme violation of trust that occurred. And this was an extremely vulnerable victim. And for those reasons, the Court feels like it cannot minimize the acts such that this would only be a probatable type sentence[,] which I don't even think it could be probated anyway because I think there's a 30% to serve. Am I correct?

At this point, the State clarified that the thirty-percent requirement pertained only to release eligibility in confinement, not to probation eligibility. The court responded, "Yeah. I'm gonna order that obviously."[2] Following this exchange, the court addressed logistical matters related to the Defendant's self-reporting and recommended placement in a special needs unit within TDOC, noting his age and medical condition.

Although the trial court acknowledged its review of the record and recognized that the Defendant was eligible for full probation, its explanation for denying an alternative sentence focused almost exclusively on the nature of the offense and the victim's vulnerability. In its subsequent written order, the court stated that it based the denial of alternative sentencing solely on the need to avoid depreciating the seriousness of the offense. When that is the only reason confinement is imposed, the record must establish that "the circumstances of the offense *as particularly committed in the case* . . . demonstrate[d] that the defendant committed the offense in some manner more

---

[2]    Of course, probation eligibility under Tennessee Code Annotated section 40-35-303 is distinct from release eligibility under section 40-35-501. As such, a trial court may impose an alternative sentence so long as the offense is statutorily eligible for that relief. This remains true even when a sentence of confinement for that same offense would require the defendant to serve a minimum percentage before becoming eligible for parole. *See, e.g.*, *State v. Wyse*, No. E2019-01454-CCA-R3-CD, 2020 WL 6141011, at *8 (Tenn. Crim. App. Oct. 20, 2020), *no perm. app. filed*; *State v. Armstrong*, No. M2019-01487-CCA-R3-CD, 2020 WL 6041922, at *18 (Tenn. Crim. App. Oct. 13, 2020), *no perm. app. filed*.

egregious than is contemplated simply by the elements of the offense." *Trent*, 533 S.W.3d at 292-93 (emphasis in original).

That requirement presents difficulty here. The record does not clearly establish the specific conduct underlying the conviction. As the trial court itself noted, "there was never a time period that was nailed down to one specific act at any point." Absent clarity as to which act formed the basis for the conviction, it is unclear what conduct the court relied on in assessing either the seriousness of the offense or the victim's vulnerability for purposes of sentencing.

Nor does the record reflect the trial court's consideration of other sentencing purposes or principles. Although the court referenced the Defendant's age and medical condition, it did so only in relation to placement in a special needs unit after deciding to impose confinement. Similarly, although the court reviewed the presentence report and the psychosexual evaluation, it did not explain how the seriousness of the offense outweighed other considerations reflected in those materials, including any evidence suggesting the Defendant's amenability to rehabilitation.

As a result, we are unable to conclude that the record adequately reflects the trial court's application of the purposes and principles of sentencing in its denial of alternative sentencing. Although we express no view on whether an alternative sentence should ultimately be imposed, the lack of supporting findings precludes meaningful appellate review. We therefore respectfully remand this case to the trial court for a new hearing regarding the denial of an alternative sentence. *See Trent*, 533 S.W.3d at 296 (holding that a remand for a new sentencing hearing is the "proper remedy" when "the record is not capable of meaningful appellate review" on the question of alternative sentencing).

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in imposing a six-year sentence. However, we respectfully remand the case to the trial court for a new hearing regarding the denial of an alternative sentence.

s/ **Tom Greenholtz**
TOM GREENHOLTZ, JUDGE